[No. 22521-9-I.   Division One.   January 16, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD BRADLEY BARTHOLOMEW, *Appellant.*

618

*Andrew P. Zinner* and *Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cynthia S.C. Gannett, Deputy,* for respondent.

FORREST, J.—Richard Bradley Bartholomew was convicted in a jury trial of robbery in the first degree. He appeals from the denial of his pretrial motion to suppress certain evidence and from the finding that he was lawfully arrested by the Seattle police. We reverse.

On February 17, 1988, the Fishers Blend Credit Union in Seattle was robbed by a single armed man. Two employees of the credit union and a third witness saw the robber and

described him as about 6 feet tall, slender, with "scraggly" hair partially covered by a stocking cap, and with a full beard. In addition to the cap on his head, the robber was described as wearing a red shirt, dark blue jeans, construction boots, and "John Lennon–type" round, wire–rimmed eyeglasses. The gun used in the robbery was described as a small pistol that was dark gray–blackish in color.

On March 1, Detective Milo Walker of the Seattle Police Department, who had been assigned to investigate the robbery, received a telephone call from an anonymous informant stating that Cherylene Bartholomew and her ex–husband, Brad Bartholomew, were responsible for the robbery. The caller named Brad Bartholomew as the armed robber of the credit union and gave the Tacoma address at which Cherylene and Brad Bartholomew were staying. The caller also gave correct information about the crime including the amount of money stolen within $5 of the actual amount.

During his investigation, Detective Walker contacted Detective Yerbury of the Tacoma Police Department and discovered that Cherylene Bartholomew was a suspect in a Tacoma credit union robbery. Detective Yerbury had obtained an arrest warrant for Cheylene Bartholomew and a search warrant for her Tacoma residence. This search warrant named three specific items: (1) a bright yellow baseball cap; (2) a chrome finished handgun; and (3) yellow safety goggles.

On March 2, 1988, Detective Walker and officers of the Seattle Police Department accompanied Detective Yerbury and officers of the Tacoma Police Department to serve these warrants on Cherylene Bartholomew. The Seattle police officers were present ostensibly to assist the Tacoma police with the execution of the Tacoma warrant, although they planned to arrest Brad Bartholomew if he matched the physical description given by witnesses of the Seattle robbery.

The Seattle police officers entered the premises with the Tacoma police and arrested Bartholomew. The Seattle

police seized a pair of round wire–rimmed glasses from Bartholomew's car and a pair of construction boots, which were photographed. During execution of the Tacoma search warrant, the Tacoma police discovered and validly seized the gun named in that warrant. This gun also matched the description of the gun used in the Seattle robbery.

Subsequent to his arrest, Bartholomew was photographed and the pictures were used in an identification photo montage. Two of the three witnesses to the Seattle robbery identified Bartholomew as the robber. The eyeglasses, the photographs of the construction boots, the photo montage, and the witness identifications were admitted at trial over appellant's objection. The admission of this evidence is the subject of this appeal.

One basic issue is dispositive of this case: Were the Seattle police officers lawfully and justifiably present in the defendant's home when they arrested him and seized the evidence in question? The Seattle police officers had neither an arrest warrant nor a search warrant when they entered defendant's residence with the Tacoma police. The State justified the officers' entry on the basis of the following provisions of RCW 10.93.070:

> In addition to any other powers vested by law, a general authority Washington peace officer who possesses a certificate of basic law enforcement training or a certificate of equivalency or has been exempted from the requirement therefor by the Washington state criminal justice training commission may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state, under the following enumerated circumstances:
>
> . . . .
>
> (3) . . . in response to a request of a peace officer with enforcement authority;
>
> . . . .
>
> (5) When the officer is executing an arrest warrant or search warrant; . . .

■■ Subsection (5) is inapplicable to the present case. This subsection does not authorize a police officer to participate in the execution of any search warrant issued anywhere in the state. Rather, it provides that an officer who

has obtained a valid warrant may go outside his jurisdiction to execute that warrant. This interpretation is mandated upon reading the statute as a whole and considering subsection (5) in context.

Subsection (4) gives an officer authority to act anywhere in the state "[w]hen the officer is transporting a prisoner[.]". Subsection (6) gives an officer authority to act throughout the state "[w]hen the officer is in fresh pursuit . . .". Read in context, subsection (5) must be understood as granting an officer authority to execute a warrant anywhere in the state when that warrant was first properly obtained within the officer's jurisdiction. In this case, the Seattle police were not in Tacoma to execute a warrant they had obtained in Seattle. Thus, the State's interpretation of RCW 10.93.070(5) is unpersuasive. If any provision of the statute is applicable, it must be subsection (3).

■ The undisputed facts show that the Seattle police officers were not present "[i]n response to a request for assistance" by the Tacoma police. RCW 10.93.070(3). There is no indication that the Tacoma police needed assistance in the execution of their routine search warrant. The Seattle police entered Bartholomew's residence for their own purposes to investigate the Fishers Blend Credit Union robbery. As candidly reflected in the investigating officer's report, "[i]f Brad was there, [the Seattle police] planned to arrest him for [the Seattle] robbery if he fit the physical description."

This is not a case where one law enforcement agency is executing a warrant and desires the expertise of officers from another agency. It is not a case where, for example, officers in a small rural community are executing a search warrant on a drug manufacturing operation, and request assistance from officers of the Drug Enforcement Administration who have experience identifying and confiscating drugs and drug paraphernalia. Nor is this a case where an understaffed police force requests additional manpower to insure safety while executing a warrant. Instead, the presence of the Seattle officers arose solely from their desire to

enter the premises to conduct a warrantless search for evidence of a Seattle robbery, and not from their response to a request from the Tacoma Police Department.

RCW 10.93.070(3) facilitates the cooperation of law enforcement agencies on both a contractual and an ad hoc basis. An agency with primary territorial jurisdiction that genuinely needs assistance from another law enforcement agency may request such assistance. A law enforcement agency, however, cannot avoid the warrant requirement by asking to "tag along" on another agency's warrant for its own purposes. Nor can an agency holding a warrant request unneeded assistance to enable another agency to conduct an otherwise illegal search. RCW 10.93.070 was enacted to allow law enforcement officers to cooperate when genuinely necessary. It should not be interpreted or used to circumvent the protections of the United States and Washington State Constitutions.

The State cites three federal cases in support of its position.[1] These cases interpret a provision in 18 U.S.C. § 3105[2] that is similar to RCW 10.93.070. In each of these three cases, one law enforcement agency genuinely desired and requested assistance from another agency. None suggests that the search in the instant case was permissible. In *United States v. Hare,* 589 F.2d 1291 (6th Cir. 1979) officers from the Bureau of Alcohol, Tobacco, and Firearms (ATF) obtained a search warrant for firearms and requested assistance from the Drug Enforcement Agency (DEA) in the event drugs were discovered during the search. During the course of the search, the ATF agents found drugs in plain view, and the DEA agents assisted

---

[1]*United States v. Hare,* 589 F.2d 1291 (6th Cir. 1979); *United States v. Medlin,* 842 F.2d 1194 (10th Cir. 1988); *United States v. Wright,* 667 F.2d 793 (9th Cir. 1982).

[2]This statute reads:

"A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, *except in aid of the officer on his requiring it,* he being present and acting in its execution." (Italics ours.)

with their seizure. This drug evidence was immediately recognizable as contraband, and could have been lawfully seized by the ATF agents based on the "plain view" exception to the warrant requirement. The court held that the drugs were properly seized.

The instant case is distinguishable. The Tacoma police officers could not have recognized the defendant as someone subject to arrest. Unlike the facts in *Hare,* the Tacoma police did not request the assistance of the Seattle police. In fact, the Tacoma police had no need of assistance from the Seattle police as they were simply executing a routine search warrant.

In *United States v. Medlin,* 842 F.2d 1194 (10th Cir. 1988) a sheriff's deputy accompanied ATF officers who had obtained a search warrant for illegal firearms. The court held that because the deputy sheriff had been asked to assist the ATF agents, he was lawfully present during execution of the federal warrant. The court noted, however, that the deputy's power was derived from and was no greater than the authority extended to the federal officers whom he was assisting.[3] When the sheriff and the ATF agents seized some 667 items of stolen property which were not listed in the warrant, they exceeded the scope of the original warrant. The court held that all of the seized evidence, including that identified in the federal warrant, should be suppressed because the original warrant, which was legal and specific, had been converted into an illegal general warrant. *Medlin,* if anything, supports Bartholomew's position.

In *United States v. Wright,* 667 F.2d 793 (9th Cir. 1982), an income tax prosecution, an ATF officer had a federal search warrant for seizure of a California driver's license in connection with a federal firearms violation. The day before executing the warrant the agent requested assistance from a state narcotics enforcement officer. In an earlier appeal, it had been held that the state officer's presence was not a

---

[3]*Medlin,* at 1197.

ruse to avoid the warrant requirement and that the state officer's presence had been requested because of a genuine need for assistance. On appeal, the court therefore found that the narcotics officer was lawfully present on the premises. Being lawfully present, the state officer's discovery of plain view evidence was proper. Unlike the instant facts, the officer holding the warrant unequivocally requested assistance from the other officer.

Here, the presence of the Seattle officers during execution of the Tacoma Police Department's warrant was unnecessary. The Seattle police could have given the Tacoma police the robber's description and told them they had probable cause to arrest Bartholomew if he matched the description. With that information, the Tacoma police could have arrested Bartholomew for the Seattle police.

The presence of the Seattle police officers at the Bartholomew residence cannot be interpreted as assistance pursuant to RCW 10.93.070(3). Bartholomew's arrest was unlawful, and the search incident thereto illegal because the Seattle police did not have authority to enter Bartholomew's home. Accordingly, the trial court erred in denying the suppression motion. The trial court did not have occasion to discuss other possible grounds for admission of the evidence, such as inevitable discovery,[4] nor was it called upon to consider the possible effect of the invalid arrest on the in-court identification.

We therefore remand to the trial court for a hearing as to whether the disputed items of evidence were inevitably discoverable or admissible on other grounds. The court will consider the admissibility of the wire-rimmed eyeglasses, the photographs of the construction boots, the photo montage and the in-court identification of Bartholomew. If

---

[4]See State v. Reid, 38 Wn. App. 203, 209 n.6, 687 P.2d 861, review denied, 102 Wn.2d 1025 (1984); State v. Broadnax, 98 Wn.2d 289, 308, 654 P.2d 96 (1982); 3 W. LaFave, Search and Seizure § 11.4, at 624 (1987).

admission of the evidence was proper, or harmless error, a new trial is not required, otherwise, a new trial shall be ordered.

COLEMAN, C.J., and SWANSON, J., concur.