[No. 25957-1-I.   Division One.   September 16, 1991.]

MEHRDAD GHAFFARI, *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

*Albert A. Rinaldi, Jr.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Gwendolyn Howard, Assistant,* for respondent.

PEKELIS, J. — Mehrdad Ghaffari appeals a judgment affirming the administrative revocation of his license because of his refusal to take a Breathalyzer test. Ghaffari contends that his refusal was the product of an unlawful detention. He also contends that the police failed to adequately explain that he did not have an absolute right to consult with his attorney before submitting to the test.

I

On the evening of August 18, 1988, Renton Police Officer James J. Bryant observed Ghaffari's vehicle traveling southbound on Highway 99, approximately 15 miles outside the Renton city limits. According to Bryant, the vehicle was moving back and forth between lanes and crossed the center line four times and the fog line twice. He estimated that the vehicle was traveling between 61 and 63 miles per hour in a 50-mile-per-hour zone.

Officer Bryant continued to observe the vehicle as it proceeded through Maple Valley and entered the city limits of Black Diamond. Once inside Black Diamond, Officer Bryant activated the emergency lights on his patrol cycle and pulled Ghaffari over.

Officer Bryant testified that Ghaffari smelled of intoxicants and that his eyes were glassy. He also noticed that Ghaffari's speech was slightly slurred and that he exhibited extreme mood swings, ranging from cooperative one minute to threatening the next. Officer Bryant told

Ghaffari that he was detaining him and advised Ghaffari of his *Miranda* rights.[1]

Approximately 5 minutes later, Officer Thomas G. Hill of the Black Diamond Police arrived in response to Officer Bryant's request for assistance. After failing three different field sobriety tests, Ghaffari was arrested by Officer Hill and transported to the Enumclaw Police Department.[2]

Officer Hill testified that he read Ghaffari his *Miranda* warnings and implied consent warnings at the police station. Ghaffari refused to sign an acknowledgment form and refused to take a breath test without first speaking with his attorney. Officer Hill offered to place a telephone call to Ghaffari's attorney for him, but Ghaffari declined. Ghaffari did, however, allow Hill to place a telephone call for him to Ghaffari's wife. Ghaffari spoke briefly to his wife. After he hung up, Officer Hill asked him if "he could have his attorney there in a reasonable period of time." Ghaffari replied that he did not know and was unwilling to furnish his attorney's number because he wanted to speak with him in private. Officer Hill again asked Ghaffari to take the breath test. When Ghaffari refused, Hill recorded the refusal into the Breathalyzer machine.

On December 16, 1988, the Department entered an order revoking Ghaffari's driving privileges for 1 year. Ghaffari appealed the order to superior court. At trial, counsel for the Department asked Officer Bryant the following questions:

Q: [Was] this stop made in your geographic jurisdiction?
A: Yes, it is.
Q: Do you have a prior written consent from the Black Diamond Police Department or King County Sheriff's Department for making stops in their jurisdiction?
MR. RINALDI: Your Honor, I object to that answer by this officer unless their aim is to produce that. That will be

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2] Black Diamond has a contract with Enumclaw for jail privileges and services.

one of the issues presented to the Court. You can't produce information like that unless it is certified or properly authenticated.

The objection was overruled, and Officer Bryant testified that the Renton Police Department had a reciprocal agreement with most of the law enforcement agencies in King County, including Black Diamond.

On cross examination, Officer Bryant admitted that he did not have the actual consent letter with him. Defense counsel then asked the officer whether he had ever produced such a letter. Bryant replied:

A: I have held it and know it exists. I have read it.
Q: Who wrote it?
A: The mayor and the City of Black Diamond, with the police chief, issued a letter to the Department of Renton. It's not made out to me. It's made [out] to law enforcement agencies.

At the end of trial, the court affirmed the order of revocation. Prior to the entry of findings of fact and conclusions of law and the judgment, Ghaffari moved for reconsideration. In its supplemental response to the motion, the Department submitted for the first time certified copies of two consent letters addressed to the Renton Chief of Police. The first letter, dated August 30, 1985, was from the Sheriff Director of the King County Department of Public Safety; the second letter, dated August 8, 1985, was from the Chief of Police of the Black Diamond Police Department. The motion for reconsideration was denied. Ghaffari appeals.

## II

Ghaffari contends that the revocation of his license was improper because Officer Bryant lacked the authority to stop Ghaffari's vehicle outside the jurisdiction of the City of Renton.

In response, the Department maintains that Officer Bryant's action was authorized under the following provision of RCW 10.93.070:

In addition to any other powers vested by law, a general authority Washington peace officer who possesses a certificate of basic law enforcement training or a certificate of equivalency or has been exempted from the requirement therefor by the Washington state criminal justice training commission may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state, under the following enumerated circumstances:

(1) Upon the prior written consent of the sheriff or chief of police in whose primary territorial jurisdiction the exercise of the powers occurs;

Ghaffari asserts, first, that subsection (1) is unconstitutional, because it does not set forth adequate safeguards to prevent arbitrary enforcement. Without much elaboration or authority, he argues, among other things, that there is no basis in the statute for determining (1) how the public is to be notified with regard to when and whom written consent is granted and (2) how long such consent may remain in effect.

It is well established that legislation is presumed constitutional and the challenging party has the burden of proving beyond a reasonable doubt that the challenged statute is unconstitutional. *American Dog Owners Ass'n v. Yakima*, 113 Wn.2d 213, 215, 777 P.2d 1046 (1989); *see also State v. Melcher*, 33 Wn. App. 357, 359, 655 P.2d 1169 (1982).

RCW 10.93.070(1) embodies the Legislature's determination that any qualified general authority peace officer with prior written consent may operate outside the officer's primary jurisdiction. We do not view the absence of standards such as those suggested by Ghaffari as fatal to the statute's constitutionality. Where a party believes that an agency's grant of consent has either expired or is somehow invalid, that party can elect to challenge the validity of the consent in court. Indeed, this is precisely what Ghaffari does here. See *infra*. Moreover, any person

who wishes to know whether an officer has the authority to act in a given jurisdiction may find out by simply contacting the officer's employing agency or the agency with primary territorial jurisdiction. We therefore reject Ghaffari's constitutional challenge.

Ghaffari next asserts that even if RCW 10.93.070(1) is constitutional, the Department failed to prove by a preponderance of the evidence that the requirements of the statute were satisfied.

■ We agree with Ghaffari's assertion in part. When an officer's authority to act under subsection (1) has been challenged, it is the Department which must prove compliance with the statute's requirements. However, we disagree that there was a failure of proof in this case. While the officer's authority is most easily proved by producing the consent letter itself, it is not the only way. Here the officer was invited to testify on cross examination that he knew the letter existed because he had seen it, read it, and was able to generally describe its content. This testimony was sufficient to prove compliance with the statute.

In addition, Ghaffari's contention is defeated because the Department did produce two consent letters in response to Ghaffari's motion for reconsideration. Ghaffari argues that the Department should not have been permitted to do so. We disagree.

■ CR 59(g) provides:

> On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, *take additional testimony,* amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

(Italics ours.) Under this rule, the trial court may, within its discretion, consider additional evidence at a motion for

a new trial in an action tried without a jury. *See Zulauf v. Carton*, 30 Wn.2d 425, 428, 192 P.2d 328 (1948); *Field v. Field*, 163 Wash. 115, 118, 300 P. 532 (1931); *Cerjance v. Kehres*, 26 Wn. App. 436, 441-42, 613 P.2d 192 (1980). Additional evidence accepted posttrial is subject to the same rules for admissibility applicable at trial. However, Ghaffari's contention on appeal is simply that the submission of the letter in reply to his motion for reconsideration was untimely.[3]

Accordingly, we conclude that Officer Bryant had the authority to stop and detain Ghaffari outside the jurisdictional boundary of Renton pursuant to RCW 10.93.070(1). The statute is not unconstitutional. In addition, when the officer's authority to conduct an arrest outside his jurisdiction is challenged, the Department is required to prove compliance. While this is best done by producing copies of the requisite documentary evidence, here the testimony of the officer was sufficient to establish his authority to act. Furthermore, it was within the trial court's discretion to accept and consider the consent letters submitted in response to a motion for reconsideration.

## III

Ghaffari next contends that the police failed to adequately clarify his confusion concerning his rights under the implied consent statute, RCW 46.20.308.

Under this statute, "[a] driver must be afforded an opportunity to make a knowing and intelligent decision whether to take the Breathalyzer test." *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 894, 774 P.2d 1187 (1989); *see also Welch v. Department of Motor Vehicles*, 13 Wn. App. 591, 536 P.2d 172 (1975). Thus, before this test can be administered, the driver must be

---

[3]Moreover, Ghaffari's argument at trial was that the officer's testimony regarding the letter was improper. He claimed that the Department was required to produce a certified copy of the letter itself which is precisely what the Department did.

informed of his rights regarding the taking of the test and the consequences of a refusal. RCW 46.20.308(2).[4] If the information conveyed confuses the driver about his rights under the statute, the driver may claim that he had no reasonable opportunity to refuse. *See, e.g., Strand v. Department of Motor Vehicles*, 8 Wn. App. 877, 509 P.2d 999 (1973).

█ Ghaffari asserts that he was led to believe by the officer that he had a right to consult with an attorney before deciding whether to submit to the breath test. Although he concedes that this is not the law in Washington, Ghaffari argues that the officer created an expectation which the officer was then obliged to satisfy. We know of no authority for this proposition. Furthermore, the record does not support Ghaffari's contention that Officer Hill created such an expectation. He only said that Ghaffari could consult with an attorney if he arrived at the jail within a reasonable time. By asking Ghaffari for the final time whether he would consent to the breath test, it was clear that the officer would wait no longer for the lawyer, if indeed, Ghaffari's wife had even called one.

Accordingly, we affirm the revocation of Ghaffari's driving privilege.

COLEMAN and BAKER, JJ., concur.

Reconsideration denied October 25, 1991.

Review denied at 118 Wn.2d 1019 (1992).

---

[4] RCW 46.20.308(2) provides in relevant part: "The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial."