[No. 28814-8-I.   Division One.   August 9, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. BROCK ALLEN RASMUSSEN, *Appellant.*

*Andrew Schwarz* of *The Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

GROSSE, J. — The appellant, Brock A. Rasmussen, appeals his conviction for delivery of cocaine, claiming that the arresting police officers were without authority because they acted outside their geographical jurisdiction. Rasmussen contends that because his arrest was unlawful, the trial court erred by denying his motion to suppress the cocaine delivered to the officers. We determine the arrest was lawful and affirm the conviction.

Rasmussen was arrested for delivery of cocaine by three officers of the Black Diamond Police Department. The officers had driven from Black Diamond to the city of Kent to conduct an undercover narcotics operation, although they had not notified the Kent police of their operation in advance. Rasmussen led the officers to a local Kent tavern where he met Christopher Thomson in the parking lot. Thomson agreed to sell Rasmussen a small quantity of cocaine. Rasmussen took money from the officers and brought back a quarter gram of cocaine, which he delivered to the officers. The officers arrested Rasmussen and Thomson.

Rasmussen and Thomson were each charged with one count of delivery of cocaine under RCW 69.50.401. At trial, Rasmussen moved to suppress the evidence of the seized cocaine, claiming that it was the fruit of an unlawful arrest because the Black Diamond officers were operating outside of their jurisdiction. A copy of a document entitled notice of consent was submitted as evidence. The notice of consent authorized outside police agencies, including the Black Diamond Police Department, to enforce criminal or traffic laws within the jurisdiction of Kent. The trial court found the consent effective under the Washington Mutual Aid Peace

Officer Powers Act of 1985 (hereinafter the Act), RCW 10.93, and denied the motion to suppress the cocaine. A jury found Rasmussen guilty.

Rasmussen claims the Black Diamond police officers were not authorized to arrest him because the arrest took place outside the geographical boundaries of their municipality. Rasmussen argues the Act provides statewide jurisdiction of peace officers only in certain circumstances and contends the circumstances in this case do not fall within the scope of the Act.

The traditional common law rule restricted the geographical jurisdiction of peace officers; municipal officers had no power to arrest outside the boundaries of their municipality. *Wenatchee v. Durham*, 43 Wn. App. 547, 549, 718 P.2d 819 (1986). An arrest made outside the officer's jurisdiction was as unlawful as an arrest made without probable cause. *Durham*, 43 Wn. App. at 550. This general rule was subject to two narrow exceptions: An officer could make a lawful arrest outside the jurisdiction if in "fresh pursuit" of an offender, or if the officer was specially deputized. *See Durham*, 43 Wn. App. at 550; *State v. Koetje*, 35 Wn. App. 157, 159-60, 665 P.2d 432, *review denied*, 100 Wn.2d 1021 (1983).

The Legislature perceived these jurisdictional restraints as hampering mutual aid and cooperation between agencies and in 1985 enacted the Act. The Legislature stated its intent as follows:

> It is the intent of the legislature that current artificial barriers to mutual aid and cooperative enforcement of the laws among general authority local, state, and federal agencies be modified pursuant to this chapter.

RCW 10.93.001(2). The Act allows an officer to enforce criminal and traffic laws outside the officer's jurisdiction. In relevant part, the Act provides:

> In addition to any other powers vested by law, a general authority Washington peace officer . . . may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state, under the following enumerated circumstances:

(1) Upon the prior written consent of the sheriff or chief of police in whose primary territorial jurisdiction the exercise of the powers occurs; . . .[.]

RCW 10.93.070.

Rasmussen argues that *State v. Bartholomew*, 56 Wn. App. 617, 784 P.2d 1276 (1990) controls this case. In *Bartholomew*, the defendant was a suspect in a robbery that had taken place in Seattle. An anonymous informant notified the police that the defendant had committed the Seattle robbery and gave the police the address of a residence in Tacoma. The Seattle police contacted the Tacoma police and discovered that another occupant of the home was a suspect in a Tacoma robbery, and the Tacoma police had obtained a search warrant for the residence. The Seattle police accompanied the Tacoma police into the residence, ostensibly to assist the Tacoma officers with the execution of the search warrant, although the Tacoma officers had not requested assistance. The Seattle officers arrested the defendant in the residence and seized evidence from his car, although they had no arrest warrant or search warrant.

The State argued the arrest was lawful under RCW 10.93-.070(3), which authorizes extraterritorial law enforcement when requested by a peace officer of another jurisdiction.[1] The court found that RCW 10.93.070(3) was intended to facilitate necessary assistance, and the Seattle police could not circumvent the constitutional warrant requirements by tagging along with the Tacoma police, who did not need or request their assistance. *Bartholomew*, 56 Wn. App. at 622.

Rasmussen argues that *Bartholomew* prohibits any extra-territorial activity absent a showing of underlying necessity and cooperation. Rasmussen interprets *Bartholomew* too broadly, however. The provision applied in *Bartholomew* addressed a different subsection, RCW 10.93.070(3), which

---

[1]RCW 10.93.070(3) provides:

"In response to a request for assistance pursuant to a mutual law enforcement assistance agreement with the agency of primary territorial jurisdiction or in response to the request of a peace officer with enforcement authority".

requires a specific request for assistance. In contrast, the circumstances of the instant case fall within RCW 10.93.070(1), which authorizes extraterritorial law enforcement with the prior written consent of the chief of police of the outside jurisdiction. *Bartholomew* is also distinguishable because the intrusiveness of the arrest was more extreme; the officers entered a private residence without a warrant. The Act specifically provides that it shall be liberally construed to modify common law restrictions and therefore should be applied accordingly.[2]

We find this court's decision in *Ghaffari v. Department of Licensing*, 62 Wn. App. 870, 816 P.2d 66 (1991), *review denied*, 118 Wn.2d 1019 (1992) to be dispositive of the case at hand. In *Ghaffari*, a Renton police officer observed a weaving vehicle while outside the Renton city limits. The officer followed the vehicle and pulled it over inside the city limits of Black Diamond. When the driver refused to provide the officer with a breath test, an order was entered by the Department of Licensing revoking his driving privileges for 1 year. The driver appealed the order, contending that the Renton officer had no authority to stop the vehicle outside Renton. The Department of Licensing maintained that the officer's actions were lawful under RCW 10.93.070(1) and submitted two consent letters addressed to the Renton Chief of Police. One letter was signed by the Black Diamond Chief of Police and the other letter was signed by the Sheriff Director of the King County Department of Public Safety. This court found (1) the statute was constitutional and set forth adequate safeguards for enforcement, and (2) when a party challenges an officer's jurisdiction under the Act, the State must prove compliance with the Act, either by documentary evidence or testimony. *Ghaffari*, 62 Wn. App. at

---

[2]RCW 10.93.001(3) provides:

"This chapter shall be liberally construed to effectuate the intent of the legislature to modify current restrictions upon the limited territorial and enforcement authority of general authority peace officers and to effectuate mutual aid among agencies."

876. The court found the officer's testimony and submission of the consent letters to be ample evidence of the officer's authority to act. *Ghaffari*, 62 Wn. App. at 876.

■ The facts of the instant case are similar to the facts presented in *Ghaffari*. Rasmussen, like Ghaffari, was first observed and apprehended outside the jurisdiction of the apprehending officer. Moreover, as in *Ghaffari*, the State has submitted into evidence a consent letter granting authority to Black Diamond police officers within the jurisdiction of Renton. The *Ghaffari* court specifically found such letters to constitute adequate proof of authority. *Ghaffari*, 62 Wn. App. at 875.

■ Rasmussen tries to distinguish *Ghaffari* on the grounds that it involved a license revocation proceeding rather than a criminal prosecution. However, Rasmussen provides no authority to support his assertion that a different analysis on this issue is constitutionally mandated in a criminal prosecution. A reviewing court need not decide constitutional issues absent argument and citation to authority. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991). The court's reasoning is based upon a plain language interpretation of the statute without regard to the nature of the proceeding and is equally applicable to criminal proceedings.

■■ On appeal, Rasmussen raises some excellent public policy arguments. He argues that the risk of harm to citizens and other police officers is increased by undercover operations commenced without notice in another jurisdiction. He also contends that the nomadic exercise of police powers may encourage officers to invade other jurisdictions in an effort to obtain property subject to forfeiture in drug cases, as authorized by RCW 69.50.505. While these arguments raise valid policy concerns regarding the wisdom of the statute, they are not issues of constitutional magnitude that would be a proper basis for judicial action. These arguments are more appropriately addressed to the Legislature, the branch of government charged with determining the territorial scope of the authority of peace officers. The Act itself

is not antithetical to the Fourth Amendment or article 1, section 7 of the Washington State Constitution.

 ■ Rasmussen also claims the State failed to prove the factual predicates for the letter to take effect, such as the tenure of the Renton Chief of Police whose signature was on the letter. Rasmussen also raises the issue of whether the Black Diamond police were included in the list of agencies in effect at the time of the arrest. These arguments, however, were not made at trial. In fact, Rasmussen's counsel suggested the introduction of the letter as an exhibit.[3] A party must specifically object to evidence presented at trial and allow the trial court to rule on the issue to preserve the matter for appellate review. *State v. Fredrick*, 45 Wn. App. 916, 922, 729 P.2d 56 (1986); *see also State v. Tuitoelau*, 64 Wn. App. 65, 71, 822 P.2d 1222 (1992). Accordingly, Rasmussen should have raised the issue of the factual basis of the evidence in the court below, where the trial court could have corrected any error that might have occurred. We decline to review the issue.

The judgment and sentence of the trial court is affirmed.

FORREST and KENNEDY, JJ., concur.

---

[3]"THE COURT: Well, it seems to me, as long as this issue is being framed, we ought to have in the file something that deals with consent material. . . . [C]ertainly the notice of consent with attachment is what this officer has operated on, and we probably ought to make a record of it.
"MR. LINDELL [counsel for Rasmussen]: Your Honor, we ought to introduce it as an exhibit then.
"THE COURT: I think that's what I was going to do.
"MR. WALL [deputy prosecuting attorney]: No objection."