# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

REGINALD K. WREN and BRENDA A. )
WREN, husband and wife, )
                               )
               Respondents, )
                               )
            v. )
                               )
                               )
TAMMY S. BLAKEY, an unmarried )
person, and FLYING T RANCH, INC., a )
Washington corporation, )
                               )
              Appellants. )

No. 70691-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 11, 2014

TRICKEY, J. — To establish adverse possession, the claimant must show that possession is exclusive, actual and uninterrupted, open and notorious, and hostile. Here, the appellants failed to establish that each of those elements were present for the prescribed 10 years. The trial court did not err in quieting title in the respondents. And because the corporate form does not afford protection from personal liability when an officer commits a tort, the trial court did not err in finding the appellant personally liable for treble damages as a result of her trespass. Further, because the claim of adverse possession was a defense to the trespass claim, there was no need for the trial court to segregate the attorney fees as the two claims were intertwined. We affirm the trial court.

## FACTS

Reginald and Brenda Wren (Wren) and Tammy Blakey and the Flying T Ranch, Inc. (collectively, Blakey) own adjacent property in Arlington, Washington. Wren sued Blakey for trespass and quiet title. Blakey counterclaimed, contending

that she was entitled to the property by adverse possession. The trial court concluded that Blakey failed to prove the elements of adverse possession and quieted titled in Wren, awarding him damages and attorney fees under the trespass statute. RCW 4.24.630.

At the time Wren purchased the property, a hedgerow measuring from 50 to 70 feet wide separated the properties.[1] Since the 1930s, a fence, hidden by the hedgerow, marked the boundary of the property.

Blakey acquired the property from a sheriff's sale in 1989 and took possession in 1990 after the right of redemption had passed.[2] Edwin Tannis owned the Blakey property previously.[3]

Wren acquired the adjacent property in 2004 from Robert and Winnie Rollins (Rollins) through a statutory warranty deed.[4] In 1983, Rollins acquired the property from Charles and Glenice Kroeze (Kroeze).[5] Kroeze acquired the property from his mother in 1964.[6]

Tannis, Kroeze, and Rollins all testified that each farmed the parcel up to the edge of the hedgerow with the actual area of cultivation of either parcel dictated by the width of the hedgerow at the time.[7] All three testified that the boundary line was straight and coincided with the historic fence.[8]

---

[1] Report of Proceedings (RP) at 62.
[2] RP at 236, 409.
[3] RP at 237.
[4] RP at 56; Exhibit (Ex.) 39; Clerk's Papers at 84, Findings of Fact (FF) 2.
[5] CP at 84-85, FF 3; Ex. 40.
[6] CP at 85, FF 4; Ex. 40.
[7] CP at 88, FF 13 (undisputed).
[8] Ex. 40; RP at 238, 465.

2

Blakey testified that in 1990 she used a backhoe to clear out some of the bramble. In so doing, she accidentally pulled out some of the fence.[9] She repaired some of the posts in the fence line.[10] The hedgerow grew back.

In 2009, Blakey employed Andy Floe to install a fence on the property line. Floe approached Wren to establish the boundary line because he was having trouble locating the property line.[11] Wren showed Floe the survey from the property which was done in 2004 when Wren purchased the property. That survey showed the boundary line between the properties to be a straight line.[12] The survey showed steel T-posts and a few wooden posts every 100 feet along the property line.[13] The survey marker had been placed there by Richard Ross, Delta Land Surveyors, who surveyed the property in 2004 prior to the Wren purchase.[14]

A few weeks later, Floe demolished the hedgerow and began installing a barbed wire fence in the now denuded area.[15] Wren stopped Floe, telling him he was in the wrong place.[16] Blakey then told Wren that this was where she had installed the 1990 fence and that the property was hers by adverse possession.[17] Blakey ordered Floe to continue, telling Wren to sue her.[18]

---

[9] RP at 423.
[10] RP at 420.
[11] RP at 65.
[12] RP at 65.
[13] RP at 66.
[14] RP at 66-67.
[15] RP at 71
[16] RP at 70-71.
[17] RP at 72; CP at 89, FF 16 (unchallenged).
[18] RP at 72.

After Blakey installed the fence, Wren hired a surveyor, William Lloyd.[19] That survey clearly shows that the fence Blakey installed was located west of the boundary line between the two properties, ranging from 0.00 feet at the southerly end to 49.35 feet west of the boundary line at the northerly end.[20]

Blakey asserts that the fence was on the western side of her property and that the fence she installed in 2009 was the same as the one in 1990.[21] However, this testimony is contradicted by Kroeze, Rollins, and Tannis, all of whom testified that the boundary was a straight line between the properties.[22]

Wren also presented evidence from Terry Curtis, a photogrammetry expert.[23] Curtis's stereoscopic aerial photographs supported the witnesses' testimony that the boundary between the two properties was a straight line.[24]

Blakey, in addition to her own testimony, presented testimony from Gerald Painter, a professional land surveyor who was currently the owner of a flying school where Blakey kept her plane.[25] However, Painter did not look at the property or conduct a survey himself.[26]

The court found that the property line was clearly established and further that Blakey had failed to establish adverse possession.[27] The court found that the hedgerow had grown back since 1990 so there was no established use of the

---

[19] RP at 133-34.
[20] Ex. 6.
[21] RP at 429, 435.
[22] RP at 238, 465
[23] RP at 153-54.
[24] RP at 160, 174.
[25] RP at 334.
[26] RP at 340, 383.
[27] CP at 8 (Memorandum Decision, p. 3).

property and thus the installation of the barbed wire fence in 2009 was a trespass.[28]

The court awarded damages for the cost of additional feed Wren had to purchase because the barbed wire fence prevented Wren from pasturing his horses.[29] The court also included costs for the installation of a wooden fence to replace the barbed wire fence. The court trebled damages under RCW 4.24.630, the intentional trespass statute.[30] Treble damages amounted to $40,398.75.[31] The court also awarded costs and attorney fees.

Blakey appeals, arguing the court erred in quieting title in Wren and dismissing her claim for adverse possession and awarding attorney fees. Blakey also appeals the court's attorney fee award.

ANALYSIS

Adverse Possession

Blakey challenges the trial court's findings that her activities on the disputed land did not constitute adverse possession because they were neither open and notorious nor hostile.

Adverse possession presents questions of both law and fact. The trier of fact determines whether the essential facts exist, and the court determines whether those facts constitute adverse possession. Anderson v. Hudak, 80 Wn. App. 398, 401-02, 907 P.2d 305 (1995). On appeal, this court reviews the determination of

---

[28] CP at 9 (Memorandum Decision, p. 4).
[29] CP at 11 (Memorandum Decision, p. 6).
[30] CP at 9 (Memorandum Decision, p. 4).
[31] CP at 12 (Memorandum Decision, p. 7).

adverse possession de novo but defers to the factual findings made at trial. Bryant v. Palmer Coking Coal Co., 86 Wn. App. 204, 210, 936 P.2d 1163 (1997).

When the trial court enters findings of fact and conclusions of law, our review is limited to determining whether those findings of fact are supported by substantial evidence and if the findings of fact support the conclusions of law. Douglas v. Visser, 173 Wn. App. 823, 829, 295 P.3d 800 (2013). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premises. Douglas, 173 Wn. App. at 829. We view the evidence and reasonable inferences in the light most favorable to the prevailing party. Top Line Builders, Inc. v. Bovenkamp, 179 Wn. App. 794, 803, 320 P.3d 130 (2014) (citing Jensen v. Lake Jane Estates, 165 Wn. App. 100, 104, 267 P.3d 435 (2011)).

To successfully establish an adverse possession claim, a claimant must possess the property for at least 10 years in a manner that is "'(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile.'" Gorman v. City of Woodinville, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012) (quoting ITT Rayonier, Inc. v. Bell, 112 Wn.2d 754, 757, 774 P.2d 6 (1989)). Title vests automatically in a claimant who satisfies all of these elements throughout the 10-year period. Gorman, 175 Wn.2d at 72. The burden of establishing each element is on the party claiming to have adversely possessed the property. Anderson, 80 Wn. App. at 401.

Adverse possession occurs if a party uses property "'as if it were his own, entirely disregards the claims of others, asks permission from nobody, and uses

the property under a claim of right.'" Standing Rock Homeowners Ass'n v. Misich, 106 Wn. App. 231, 239, 23 P.3d 520 (2001) (quoting Granite Beach Holdings, LLC v. Dep't of Natural Res., 103 Wn. App. 186, 200, 11 P.3d 847 (2000)). If the land at issue is vacant, open, unenclosed, and unimproved, we presume that the use is permissive. Standing Rock Homeowners Ass'n, 106 Wn. App. at 239. The ultimate test is whether the adverse possessor exercised such dominion over the land that the legal owner should have recognized that the adverse possessor was treating the land as would its true owner. ITT Rayonier, Inc., 112 Wn.2d at 759.

Wren introduced a survey from Cascade Surveying & Engineering, Inc., which clearly shows that the fence installed by Blakey veered off the straight property line.[32] Wren also submitted multiple aerial photographs attested to by Terry Curtis, a photogrammetry expert. Curtis supplied the court with photographs taken from 1976 through 2009. Curtis presented a 1983 photograph in which the fence posts were stereoscopically discernible. From that information, he drew a line through the fence posts supporting the previous owners' testimony that the historic fence line was a straight line.[33]

Rollins testified that he had rented a portion of the Blakey property to provide feed for his cows.[34] Aerial photographs showed the hedgerow to be a consistent straight line on the Wren side, while the hedgerow on the Blakey property continued to expand eastward into that property.[35]

---

[32] Ex. 6; RP at 143.
[33] Ex. 28; RP at 160.
[34] RP at 93.
[35] Ex. 13, 14, 17.

7

Blakey claims that her repairing the fence in 1990 is sufficient to satisfy the elements needed to establish adverse possession. This claim, however, is only supported by her own testimony and Gerald Painter, a surveyor, who neither surveyed nor visited the property.[36]

Blakey provided a declaration of Robert Huey, a surveyor, who surveyed the property on April 11, 2013, two months after trial,[37] in her motion for reconsideration and in her brief. This survey was not before the trial court and Wren objected to its admission under CR 59(a)(4).[38]

CR 59(a)(4) provides that a new trial may be granted for evidence that the party "could not with reasonable diligence have discovered and produced at trial." See also Morinaga v. Vue, 85 Wn. App. 822, 831, 35 P.2d 637 (1997) (only newly discovered evidence not available may be considered on motion for reconsideration). Blakey argues that such evidence was admissible under CR 59(g) permitting the court to open the judgment, if entered, and take additional testimony. Blakey cites Ghaffari v. Dep't of Licensing, 62 Wn. App. 870, 875-76, 816 P.2d 66 (1991) (it is within court's discretion to consider additional evidence at motion for new trial in an action tried without a jury). But, Blakey does not offer any reason as to why this evidence could not have been presented at trial.

The trial court does not indicate which evidence it considered other than the briefs of both parties in its order denying the motion for reconsideration. This court has no way to know whether the court abused its discretion if it admitted the

---

[36] RP at 340, 383.
[37] CP at 27; Appellant's Br. at 19; Appellant's Reply Br. at 10, n.7.
[38] CP at 34; Resp't's Br. at 23-25.

evidence, particularly here, where the evidence could easily have been presented at trial. However, even the "corrected" survey line in the Huey declaration shows that the boundary line was straight and not curved.[39]

Here, there was substantial evidence that the property owners, present and former, used the land only up to the hedgerow. Blakey does not challenge finding of fact 12 describing the hedgerow as 12 feet high and 70 feet wide.[40] A photograph exhibit showed the fence line visible in 1983.[41] Thus, it is clear that Blakey could not have exerted the requisite dominion and control required to establish adverse possession.

In conclusion, substantial evidence supports the trial court's findings of fact, which support its conclusions of law.

Personal Liability

Blakey contends that the trial court erred in finding her personally liable, jointly and severally with Flying T Ranch, for the damages sustained by Blakey's trespass upon the Wren property. Blakey is the sole shareholder and president of Flying T Ranch corporation.[42]

The corporate form protects officers from personal liability unless the officer commits a tort or disregards the corporate entity. See Grayson v. Nordic Const. Co., Inc., 92 Wn.2d 548, 552-53, 599 P.2d 1271 (1979); Johnson v. Harrigan-Peach Land Dev. Co., 79 Wn.2d 745, 752-53, 489 P.2d 923 (1971). A corporate officer's personal liability for tortious conduct can occur without a piercing of the

---

[39] CP at 32.
[40] CP at 88.
[41] RP at 160.
[42] CP at 51; RP at 323.

corporate veil. This principle was enunciated in <u>Dodson v. Econ. Equip. Co.</u>, 188 Wash. 340, 343, 62 P.2d 708 (1936), where the court held a corporate officer liable for his active participation in conversion. 188 Wash. at 342-43. In determining personal liability, the court stated that "[t]he liability of an officer of a corporation for his own tort committed within the scope of his official duties is the same as the liability for tort of any other agent or servant." <u>Dodson</u>, 188 Wash. at 343. "Where the officer performs an act or a series of acts which would amount to conversion if he acted for himself alone, he is personally liable even though the acts were performed for the benefit of his principal and without profit to himself personally." <u>Dodson</u>, 188 Wash at 343.

<u>Dodson</u> has been cited favorably in several subsequent cases. <u>Harrigan-Peach</u>, 79 Wn.2d at 753 (officers liable where they participated in fraudulent acts and maintained close control); <u>State v. Ralph Williams' NW Chrysler Plymouth, Inc.</u>, 87 Wn.2d 298, 322, 553 P.2d 423 (1976) (officer personally responsible for many of the company's unlawful acts that violated the Consumer Protection Act (CPA), chapter 19.86 RCW); <u>Grayson</u>, 92 Wn.2d 548, 551, 554, 599 P.2d 1271 (1979) (officer who drafted and directed the mailing of brochure containing deceptive advertising in violation of the CPA held liable).

Blakey contends that <u>Dodson</u> and its progeny do not apply here because the "Wrens never alleged that Blakey actively participated in tortious conversion."[43] This argument is not persuasive. When Wren approached Floe to inform him that he was putting the fence in the wrong area, Blakey came and asserted that she

---

[43] Appellant's Reply Br. at 20.

had acquired the property by adverse possession.[44] Because the trial court found no adverse possession, Blakey's incursion onto the land amounted to a trespass in violation of the statute, RCW 4.24.630. The statute provides that a person acts "'wrongfully if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act.'" The trial court found that Blakey's statement that she owned the property by adverse possession in effect acknowledged that she did not have rightful possession to the property and thus her occupation of that land was intentional.[45]

Attorney Fees

In addition to providing an award of treble damages for intentional trespass, RCW 4.24.630 provides for the award of attorney fees. Wren submitted a detailed affidavit, including the hours billed and the type of work performed. The court reviewed these records and made an adjustment.

Blakey argues the trial court abused its discretion by not segregating attorney fees. Blakey contends that Wren was entitled to fees only for that portion of his claim that pertained to intentional trespass and not those used to defeat the adverse possession claim. Blakey argues that Wren's claims did not involve the same core facts or related legal theories. But it is clear that the trespass occurred because of Blakey's illegal assertion of adverse possession. It was that trespass that caused Wren to bring an action to quiet title and seek damages for trespass.[46]

---

[44] CP at 89, FF 16 (unchallenged).
[45] CP at 10 (Memorandum Decision, p. 5).
[46] Blakey asserts the timber trespass claim as an unsuccessful claim. However, before trial, Wren withdrew that claim as a basis for its action.

A trial court is not required to segregate fees where it determines that the various claims are intertwined and no reasonable segregation of claims can be made. Boguch v. Landover Corp., 153 Wn. App. 595, 620, 224 P.3d 795 (2009). Where "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees."[47] Nor is fee segregation required "where the claims all relate to the same fact pattern, but allege different bases for recovery. Ethridge v. Hwang, 105 Wn. App. 447, 461, 20 P.3d 958 (2001).

In Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), the plaintiffs brought a civil rights claim, raising six different conditions at a state hospital that they alleged violated their constitutional right to treatment. The trial court found five of the six conditions violated the plaintiffs' rights and awarded them attorney fees based on their total submitted hours even though one of the claims was unsuccessful.[48] Although the statute authorized fees only on successful claims, the United States Supreme Court held that some

> claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigations as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

Hensley, 461 U.S. at 435.

In two cases cited by Blakey, Manna Funding, LLC v. Kittitas Cnty., 173 Wn. App. 879, 295 P.3d 1197, review denied, 178 Wn.2d 1007 (2013) and Clausen v.

---

[47] Hume v. Am. Disposal Co., 124 Wn.2d 656, 673, 880 P.2d 988 (1994) (citing Pannell v. Food Servs. of Am., 61 Wn. App. 418, 447, 810 P.2d 952, 815 P.2d 812 (1991)).
[48] Hensley, 461 U.S. at 428; 42 U.S.C. § 1988.

Icicle Seafoods, Inc., 174 Wn.2d 70, 272 P.3d 827 (2012), the court failed to segregate the attorney fee awards. The Manna court remanded for findings of fact and conclusions of law noting that the billing submitted by the county specifically referred to items that specified work on claims that it did not prevail on. 173 Wn. App at 902.

In Clausen, the trial court reduced the award of attorney fees by 10 percent for the time spent on claims not related to maintenance and cure.[49] Icicle Seafoods, Inc. appealed, contending the court erred in segregating hours by a percentage rather than hourly records. In upholding the fee award, our Supreme Court held that reducing a fee by a percentage is permissible where, as there, the particular facts of the case make the segregation of actual hours difficult. Clausen, 174 Wn.2d at 82.

When Wren filed the action for trespass, Blakey countered that there was no trespass because of adverse possession. Because the costs of the litigation all stemmed from Blakey's claim of adverse possession, the trial court did not abuse its discretion in not segregating the fees.

Below, Blakey did not dispute the reasonableness of the amount of the fees awarded, only that the trial court failed to segregate those fees. Because we have determined that no segregation was necessary, we affirm the trial court's award of fees.

Wren requests an award of attorney fees on appeal based on RCW 4.24.630 and RAP 18.1. "A party may recover attorney fees and costs on appeal

---

[49] 174 Wn.2d at 81.

when granted by applicable law." <u>Oregon Mut. Ins. Co. v. Barton</u>, 109 Wn. App.

405, 418, 36 P.3d 1065 (2001). Because Wren prevails on appeal, Wren is entitled

to fees and costs.

Affirmed.

_Trickey, J_

WE CONCUR:

_Spearman, C.J._          _Appelwick, J_