[No. 22031-8-II. Division Two. January 8, 1999.]

THE STATE OF WASHINGTON, *Petitioner*, v. THOMAS L. PLAGGEMEIER, *Respondent*.

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for petitioner.

*John L. Cross* of *Ronald D. Ness & Associates*, for respondent.

SEINFELD, J. — The State appeals the dismissal of a driving citation issued by a Poulsbo police officer who arrested the driver outside Poulsbo city limits. The officer was acting pursuant to the consent provision of a Mutual Aid Agreement among five jurisdictions. The trial court dismissed the charge, finding the agreement invalid because it failed to comply with the Interlocal Cooperation Act, RCW 39.34. We conclude that the consent section of the agreement, which allows the police officers of each jurisdiction to exercise their police powers within the other four jurisdictions, is independently enforceable under the Washington Mutual Aid Peace Officers Powers Act of 1985, RCW 10.93.070. Consequently, we reverse.

## FACTS

The Kitsap County Sheriff and the police chiefs of Bainbridge Island, Bremerton, Port Orchard, and Poulsbo signed a Mutual Aid Agreement (Agreement) that was to commence on December 15, 1995. The preamble of the Agreement states:

> Whereas, an entity known as the Bremerton-Kitsap County DWI Task Force has been created for the purpose of targeting, apprehending and successfully prosecuting individuals guilty of traffic infractions and offenses in general and DWI's in particular; and

> Whereas, it is the desire of various law enforcement agencies within Kitsap County to participate in such Task Force; and

> Whereas, multi-agency participation in such a Task Force is possible by virtue of the Washington Mutual Aid Peace Officer Powers Act set forth in Chapter 10.93 RCW and/or by the Interlocal Cooperation Act set forth in Chapter 39.34 RCW;

Sections 1 through 10 of the Agreement provide for the

creation of the task force and contain provisions related to the one year length of the agreement; the financial responsibility of each agency; the creation of a "joint board" to administer the agreement; the designation of a task force coordinator and a description of the coordinator's responsibilities; and the liability of the coordinator's employer. Sections 11 and 12 of the Agreement deal with the consent of the signatories "to the full exercise of peace officer power within their respective jurisdictions" by officers engaged in Task Force operations and provide that the consent "shall be valid" during the signatories' tenure.[1]

None of the five law enforcement agencies submitted the Agreement to their governing legislative bodies for ratification. Nor did any of them file the Agreement with their county auditor.

In April 1996, a Poulsbo police officer, acting pursuant to the agreement, arrested Thomas Plaggemeier outside the city limits and cited him for driving while under the influence of intoxicants. Plaggemeier moved for dismissal of the charge, claiming that the arresting officer was acting outside his geographic jurisdiction and, thus, the arrest was unlawful. The Kitsap County District Court agreed and dismissed the charge, concluding that: (1) the Agreement was prepared pursuant to the Washington Mutual Aid Peace Officers Powers Act of 1985, RCW 10.93 (Mutual Aid Act); (2) RCW 10.93.130 mandated that the Agreement comply with the Interlocal Cooperation Act, RCW 39.34; (3) under the Interlocal Cooperation Act, the Agreement was not effective until ratified by the local legislative body and filed with the county auditor and secretary of state; and (4) because the Agreement failed to comply with RCW 39.34, the arresting officer lacked legal authority for the arrest.

The State appealed to Kitsap County Superior Court,

---

[1]Section 11 states: "The undersigned hereby individually consent to the full exercise of peace officer powers within their respective jurisdictions by any and all properly certificated or exempted officers engaged in any operation of the Bremerton—Kitsap County Task Force. Each such consent shall be valid during the tenure of the respective undersigned individuals."

which affirmed the dismissal. We then accepted discretionary review. On appeal, the State argues that RCW 10.93 does not require that a law enforcement mutual aid agreement comply with RCW 39.34.

## DISCUSSION
## I. THE MUTUAL AID AGREEMENT AND THE INTERLOCAL COOPERATION ACT

The following provision of the Mutual Aid Act is at issue here and states in pertinent part:

> Under the interlocal cooperation act, chapter 39.34 RCW, any law enforcement agency referred to by this chapter may contract with any other such agency and may also contract with any law enforcement agency of another state, or such state's political subdivision, to provide mutual law enforcement assistance.

RCW 10.93.130.

Plaggemeier contends that a plain reading of the statute indicates that compliance with RCW 39.34 is necessary to validate any law enforcement mutual aid agreement. The State, in turn, asks us to liberally construe RCW 10.93 to allow law enforcement agencies to enter into contracts or agreements on their own initiative. It contends that requiring all mutual aid agreements to comply with RCW 39.34 would render RCW 10.93 surplusage.

The Fourth Amendment and article I, section 7 of the Washington State Constitution require a police officer to act under lawful authority. *City of Wenatchee v. Durham*, 43 Wn. App. 547, 549-50, 718 P.2d 819 (1986). An arrest made beyond an arresting officer's jurisdiction is equivalent to an arrest without probable cause. *State v. Rasmussen*, 70 Wn. App. 853, 855, 855 P.2d 1206 (1993); *Durham*, 43 Wn. App. at 550.

The Legislature enacted the Mutual Aid Act to modify common law restrictions on law enforcement authority.

RCW 10.93.001(2);[2] *Rasmussen*, 70 Wn. App. at 855; *see also Sheimo v. Bengston*, 64 Wn. App. 545, 549, 825 P.2d 343 (1992). To give effect to that intent, RCW 10.93 sets forth circumstances under which a law enforcement officer may enforce criminal and traffic laws outside the officer's jurisdiction. RCW 10.93.070;[3] *Rasmussen*, 70 Wn. App. at 855; *Sheimo*, 64 Wn. App. at 549. The Legislature also mandated liberal construction of the Mutual Aid Act. RCW 10.93.001(3);[4] *Rasmussen*, 70 Wn. App. at 857 n.2; *see also Sheimo*, 64 Wn. App. at 551.

Construction of a statute is a question of law that we review de novo. *Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 514-15, 910 P.2d 462 (1996). When a statute is clear and unambiguous on its face, we need not resort to methods of statutory construction. *Rettkowski*, 128 Wn.2d

---

[2]RCW 10.93.001(2) provides: "It is the intent of the legislature that current artificial barriers to mutual aid and cooperative enforcement of the laws among general authority local, state, and federal agencies be modified pursuant to this chapter."

[3]RCW 10.93.070 provides:

In addition to any other powers vested by law, a general authority Washington peace officer who possesses a certificate of basic law enforcement training or a certificate of equivalency or has been exempted from the requirement therefor by the Washington state criminal justice training commission may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state, under the following enumerated circumstances:

(1) Upon the prior written consent of the sheriff or chief of police in whose primary territorial jurisdiction the exercise of the powers occurs;

(2) In response to an emergency involving an immediate threat to human life or property;

(3) In response to a request for assistance pursuant to a mutual law enforcement assistance agreement with the agency of primary territorial jurisdiction or in response to the request of a peace officer with enforcement authority;

(4) When the officer is transporting a prisoner;

(5) When the officer is executing an arrest warrant or search warrant; or

(6) When the officer is in fresh pursuit, as defined in RCW 10.93.120.

[4]RCW 10.93.001(3) provides: "This chapter shall be liberally construed to effectuate the intent of the legislature to modify current restrictions upon the limited territorial and enforcement authority of general authority peace officers and to effectuate mutual aid among agencies."

at 515; *State v. Kazeck*, 90 Wn. App. 830, 833, 953 P.2d 832 (1998). But if a statute is susceptible of two or more reasonable interpretations, we will engage in statutory construction to ascertain and give effect to legislative intent. *Washington Pub. Employees Ass'n v. Washington Personnel Resources Bd.*, 91 Wn. App. 640, 652, 959 P.2d 143 (1998); *City of Redmond v. Central Puget Sound Growth Management Hearings Bd.*, 136 Wn.2d 38, 53, 959 P.2d 1091 (1998). In doing so, we construe the statute as a whole, give effect to all its language, and harmonize all provisions in their relation to each other *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996); *Washington Pub. Employees Ass'n*, 91 Wn. App. at 652.

■ We find no case law discussing RCW 10.93.130, and the legislative history provides no insight into the Legislature's intent regarding this provision. But a plain reading of the statute, in context with the remaining provisions of RCW 10.93 and with RCW 39.34, shows that its function is to inform law enforcement agencies that they have authority under the Interlocal Cooperation Act, RCW 39.34, to enter agreements for mutual law enforcement assistance.[5] A corollary of RCW 10.93.130 is that mutual law enforcement assistance agreements must comply with RCW 39.34 and obtain legislative ratification.[6] Legislative ratification of mutual aid agreements is necessary because such agree-

---

[5]RCW 10.93.130 provides:

 Under the interlocal cooperation act, chapter 39.34 RCW, any law enforcement agency referred to by this chapter may contract with any other agency and may also contract with any law enforcement agency of another state, or such state's political subdivision, to provide mutual law enforcement assistance.

"Mutual law enforcement assistance," according to RCW 10.93.020(10), "includes, but is not limited to, one or more law enforcement agencies aiding or assisting one or more other such agencies through loans or exchanges of personnel or of material resources, for law enforcement purposes."

[6]Regarding establishment of cooperative agreements, RCW 39.34.030(2) provides:

 Any two or more public agencies may enter into agreements with one another for joint or cooperative action pursuant to the provisions of this chapter: . . . Appropriate action by ordinance, resolution or otherwise pursuant to law

ments involve the allocation of fiscal resources that properly fall under the function of local legislative bodies. *See In re Juvenile Director,* 87 Wn.2d 232, 248, 552 P.2d 163 (1976).

This reading of RCW 10.93.130 does not render RCW 10.93 surplusage. RCW 10.93.130, a provision of very limited scope, merely gives notice of an agency's authority under RCW 39.34 to enter a mutual law enforcement assistance agreement. It does not independently grant authority to enter such agreements; RCW 39.34 does.

Other provisions of RCW 10.93 support this reading of RCW 10.93.130. RCW 10.93 authorizes extrajurisdictional enforcement action in six circumstances and RCW 10.93.130 relates to only one of those circumstances—action taken "[i]n response to a request for assistance pursuant to a *mutual law enforcement assistance agreement* with the agency of primary jurisdiction." RCW 10.93.070(3) (emphasis added). RCW 10.93.130 does not touch upon actions taken pursuant to RCW 10.93.070(1) (upon prior written consent), (2) (in response to an emergency), (4) (when transporting a prisoner), (5) (when executing an arrest or search warrant), or (6) (in fresh pursuit) because such actions do not rely upon a mutual law enforcement assistance agreement. Similarly, RCW 10.93.130 does not deal with the second provision of RCW 10.93.070(3), which authorizes action "in response to the request of a peace officer with enforcement authority." Consequently, our interpretation of RCW 10.93.130 does not render RCW 10.93 surplusage.

The State next seeks to avoid RCW 39.34 by arguing that the Legislature intended RCW 10.93 to "confer powers of law enforcement upon agencies beyond that" granted by RCW 39.34. It contends that *Sheimo,* 64 Wn. App. at 549, supports this argument. We disagree.

of the governing bodies of the participating public agencies shall be necessary before any such agreement may enter into force.

The Interlocal Cooperation Act also requires that: "Prior to its entry into force, an agreement made pursuant to this chapter shall be filed with the county auditor." RCW 39.34.040.

■ The *Sheimo* court did not address either RCW 10.93.130 or RCW 39.34.[7] It merely recognized that RCW 10.93 "expanded the authority of law enforcement officers to act throughout the state in a variety of circumstances" including those set forth in RCW 10.93.070(2) and (3). *Sheimo*, 64 Wn. App. at 549. But RCW 10.93.130 specifically references agreements "under" RCW 39.34. Because "under" means "subordinate" to, the reference to agreements "under" RCW 39.34 indicates a legislative intent that agencies contracting for mutual law enforcement assistance must comply with RCW 39.34. BLACK'S LAW DICTIONARY 1525 (6th ed. 1990); RCW 10.93.130.

## II. THE SIGNIFICANCE OF RCW 10.93.070(1) AND SEVERABILITY

The State also argues that RCW 10.93.070(1) authorizes the Agreement without the local legislative body ratification required by RCW 39.34. We disagree that it supports the entire agreement but, as we discuss below, it does support the consent provisions of the agreement.

RCW 10.93.070(1) allows a peace officer to enforce traffic and criminal laws outside the officer's jurisdiction "[u]pon the prior written consent of the sheriff or chief of police" of the jurisdiction in question. The State contends that language in *Ghaffari v. Department of Licensing*, 62 Wn. App. 870, 816 P.2d 66 (1991), supports its contention that the agreement is enforceable under RCW 10.93.070(1) without legislative ratification.

*Ghaffari* is distinguishable and the State construes RCW 10.93.070(1) too broadly. *Ghaffari* did not involve a mutual aid agreement, but rather letters of consent addressed from one agency to another. 62 Wn. App. at 873. The *Ghaffari* court held that the letters authorized an arrest under RCW 10.93.070(1). 62 Wn. App. at 876; *see also Rasmussen*, 70 Wn. App. at 857-58.

---

[7]The central issue of *Sheimo* was the assignment of liability under RCW 10.93. 64 Wn. App. at 549. The *Sheimo* court found liability could be shifted without specific agreement between agencies. 64 Wn. App. at 549.

The three-page Agreement here is much broader than the limited scope of enforcement actions contemplated by RCW 10.93.070(1). The Agreement establishes a set of administrative procedures and cites to RCW 39.34 along with RCW 10.93. And the language of the Agreement follows closely the requirements of RCW 39.34.030.[8] It clearly fits under RCW 10.93.070(3), which authorizes action "[i]n response to a request for assistance pursuant to a mutual law enforcement assistance agreement with the agency of primary territorial jurisdiction." Thus, it must comply with the ratification and filing requirements. RCW 39.34.030(2); RCW 39.34.040.

Here, as the State concedes, there was neither ratification nor filing of the Agreement. Consequently, the Agreement as a whole is invalid under the Interlocal Cooperation Act, RCW 39.34.

 We do agree with the State, however, that RCW 10.93.070(1) supports the consent provisions of the Agree-

---

[8]The relevant provisions of RCW 39.34.030 state:

(3) Any such agreement shall specify the following:

(a) Its duration;

(b) The precise organization, composition and nature of any separate legal or administrative entity created thereby together with the powers delegated thereto . . .

(c) It purpose or purposes;

(d) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget therefor;

(e) The permissible method or methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon such partial or complete termination;

(f) Any other necessary and proper matters.

(4) In the event that the agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, the agreement shall, in addition to items (a), (c), (d), (e) and (f) enumerated in subdivision (3) hereof, contain the following:

(a) Provision for an administrator or a joint board responsible for administering the joint or cooperative undertaking. In the case of a joint board, public agencies party to the agreement shall be represented;

ment. The Agreement contains within it two separate agreements: one that establishes an administrative body and policies among the different agencies, and another that grants consent for extrajurisdictional law enforcement. Although the Agreement as a whole is invalid under the Interlocal Cooperation Act, contract law allows the enforcement of only the consent portion, pursuant to RCW 10.93.070.

A contract can be severable or entire. *See generally Saletic v. Stamnes*, 51 Wn.2d 696, 699, 321 P.2d 547 (1958). " 'As a general rule a contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts are interdependent and common to one another and to the consideration.' " *Saletic*, 51 Wn.2d at 699 (quoting *Traiman v. Rappaport*, 41 F.2d 336, 338, 71 A.L.R. 475 (1930)). Whether a contract is entire or severable is determined by "whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." *Saletic*, 51 Wn.2d at 699 (quoting *United States v. Bethlehem Steel Corp.*, 315 U.S. 289, 298, 62 S. Ct. 581, 86 L. Ed. 855 (1942)).

Courts have also recognized partially enforceable contracts. For example, a court can enforce a provision in a generally unenforceable contract that was separately negotiated or intended as a separate agreement. *See generally French v. Sabey Corp.*, 85 Wn. App. 164, 171, 931 P.2d 204 (1997), *aff'd*, 134 Wn.2d 547, 951 P.2d 260 (1998). Further, we may preserve certain contract rights even if a party violates a statute. *See Davidson v. Hensen*, 135 Wn.2d 112, 130, 954 P.2d 1327 (1998).

The Agreement here contains three parts: (1) a preamble setting forth the policies underlying the Agreement; (2) Sections 1-10, which deal with administrative matters in a manner closely following the requirements of RCW 39.34.030; and (3) Sections 11 and 12 and signatures, which pertain to consent. The administrative and consent portions of the Agreement do not cross-reference each other.

Section 12 does mention Section 10 but a careful reading clearly indicates that the reference was a typographical error—the correct reference is to Section 11.[9]

In essence, the Agreement is a composite of two independent agreements, an agreement to create and work together in the task force and a consent to extrajurisdictional law enforcement. Upon the deletion of the administrative agreement (Sections 1 through 10), the remaining sections provide valid consent notice under RCW 10.93.070(1). *See Rasmussen*, 70 Wn. App. at 857-58; *Ghaffari*, 62 Wn. App. at 876.

The differing tenures of those two parts provide further indication that the parties intended two separate independent agreements. Section 1, dealing with administrative matters, sets forth a tenure of one year; but Section 11, dealing with extrajurisdictional law enforcement, states that agency "consent shall be valid during the tenure of the respective undersigned individuals."

Because it is clear that the drafters of the Agreement viewed the document as containing two separate agreements, we hold that the consent portion is severable. This holding does not violate the delegation doctrine as the consent agreement is not concerned with the allocation of fiscal resources, but rather with extra jurisdictional arrests. *Compare Juvenile Director*, 87 Wn.2d at 248. And the Legislature has approved such arrests without ratification provided that they fall under the provisions of RCW 10.93. Here, the consent provisions of the Agreement can stand on their own under RCW 10.93.070(1).

Thus, the consent provisions are enforceable under RCW 10.93.070(1) without satisfying the legislative ratification and filing requirements of RCW 39.34. Because the consent portion of the Agreement independently authorized the arrest of Plaggemeier pursuant to RCW 10.93.070(1), notwith-

---

[9]Section 12 states: "The consents given in Section 10 above are not intended to reallocate, under RCW 10.93.040, the responsibility of the participating agencies for the acts or omissions of their officers." Section 10 does not pertain to consent. Consent is authorized under Section 11.

standing the invalidity of the balance of the Agreement under RCW 39.34, we reverse and remand for trial.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 137 Wn.2d 1036 (1999).