IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.   78477-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN JOE BRUNSON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: September 30, 2019 |

HAZELRIGG-HERNANDEZ, J. — Kevin J. Brunson appeals his convictions on seven counts of robbery in the second degree following a stipulated facts bench trial. Brunson argues that reversal is required because the trial court erred in denying his motion to suppress evidence obtained following an illegal arrest, his motion for a Frye[1] hearing regarding the admissibility of fingerprint evidence, and his motion to sever two of the robbery counts from the other five. Brunson further contends that the trial court abused its discretion in ordering him to pay restitution. Because we found no error, we affirm.

FACTS

During January and February 2017, detectives from the Seattle Police Department (SPD), King County Sheriff's Office, and the Tukwila Police Department investigated a series of robberies of commercial establishments located within their respective

_____

[1] Frye v. U.S., 54 App. D.C. 46, 47, 293 F. 1013 (1923).

jurisdictions in Seattle and South King County area. The suspect wore similar clothing, typically showed or threatened that he had a gun, showed the clerk a handwritten robbery demand note, and placed the cash in a drawstring bag. After examining photos and video surveillance, King County Sheriff's Office Detective Michael M. Mellis and SPD Detective James Rodgers agreed that the same suspect appeared to be responsible for all the robberies.

On February 23, 2017, Detective Mellis learned that Kevin Brunson's fingerprint was a match for a fingerprint found on a demand note left during a Subway restaurant robbery. A comparison of known photographs of Brunson with surveillance images captured during the robberies indicated that Brunson's physical appearance appeared to match that of the suspect.

On March 1, 2017, Detective Mellis submitted a certification for determination of probable cause to the King County Prosecuting Attorney's Office. The certification alleged that between January 4, 2017 and February 22, 2017, Brunson committed a string of robberies of stores in King County, including Subway, Starbucks, and Rite Aid. Relying on this statement of probable cause, the King County Prosecuting Attorney's Office filed one count of robbery in the second degree against Brunson and obtained an arrest warrant from the King County Superior Court.

Detective James Rodgers and Detective Mellis discussed surveilling Brunson at his regularly scheduled community custody appointment at the Department of Corrections (DOC) office in Lakewood. On March 2, 2017, Detective Rodgers and other SPD officers arrested Brunson when he arrived at the Lakewood DOC office. Detective Mellis was working on another case and unavailable to be present at Brunson's arrest. In a search

2

incident to arrest, SPD officers recovered clothing worn during the robberies and items believed to have been used during the robberies, including a black semi-automatic pellet handgun, a can of pepper spray, a black Carhartt jacket, a black knit cap, grey Carhartt pants, black wrap-around sunglasses, a black balaclava, a small black drawstring nylon bag, a pair of black gloves, and a handwritten robbery demand note stating "get shot, or all cash now, robbery."

On April 2, 2018, the State charged Brunson by second amended information with seven counts of robbery in the second degree. Prior to trial, the court denied Brunson's motion to suppress evidence found during the search incident to his arrest. The court also denied his motion for a Frye hearing on the admissibility of fingerprint evidence and his motion to sever the first two counts from the remaining five counts. Brunson subsequently waived his right to a jury trial and agreed to proceed on a bench trial with stipulated facts.

The trial court found Brunson guilty as charged on seven counts of robbery in the first degree. The court imposed concurrent standard range sentences of 72 months of confinement on each count. The court also ordered Brunson to pay $140 in restitution to Rite Aid. Brunson appeals.

DISCUSSION

I.    Arrest Outside Jurisdiction

Brunson argues that Seattle police officers lacked authority to arrest him in Pierce County on a warrant obtained by the King County Prosecutor's Office via Detective Mellis' submission of a certification for determination of probable cause. He therefore asserts that the trial court erred in denying his motion to suppress evidence obtained as a result

of an illegal arrest. The State contends that the trial court properly denied Brunson's motion because RCW 10.93.070(5) plainly authorizes police officers to arrest persons subject to an arrest warrant in any jurisdiction in the state. We agree with the State.

The Washington Mutual Aid Peace Officer Powers Act of 1985[2], sets forth circumstances under which an officer may enforce criminal and traffic laws outside the officer's jurisdiction. State v. Plaggemeier, 93 Wn. App. 472, 477, 969 P.2d 519 (1999). In pertinent part, RCW 10.93.070 provides as follows:

> In addition to any other powers vested by law, a general authority Washington peace officer who possesses a certificate of basic law enforcement training or a certificate of equivalency or has been exempted from the requirement therefor by the Washington state criminal justice training commission may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state, under the following enumerated circumstances:
> . . .
> (5) When the officer is executing an arrest warrant or search warrant.

Here, SPD officers executed in Pierce County a valid warrant for Brunson's arrest. RCW 10.93.070(5) clearly and unambiguously authorizes any qualified Washington peace officer to "execut[e] an arrest warrant" anywhere within the state. Courts do not subject an unambiguous statute to statutory construction. Cerillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). Because SPD lawfully arrested Brunson in Pierce County pursuant to a valid arrest warrant, the trial court did not err in denying Brunson's motion to suppress evidence obtained in the search incident to his arrest.

Brunson's reliance on State v. Bartholomew, is misplaced. 56 Wn. App. 617, 784 P.2d 1276 (1990). In Bartholomew, the Seattle Police Department received an anonymous tip that the defendant had committed an armed robbery in Seattle. Id. at 619.

---

[2] Chapter 10.93 RCW

Seattle police subsequently discovered that the defendant's former wife was a suspect in an armed robbery in Tacoma, and that Tacoma police had obtained a search warrant for her residence. Id. Seattle police entered the residence with Tacoma police and effected a warrantless arrest of the defendant. Id. On appeal, the court rejected the State's argument that the arrest was authorized by RCW 10.93.070(3), which permits extraterritorial law enforcement "in response to a request of a peace officer with enforcement authority." Noting that the undisputed facts showed the Seattle police were not present in response to a request for assistance from Tacoma police, the court held that "[a] law enforcement agency . . . cannot avoid the warrant requirement by asking to 'tag along' on another agency's warrant for its own purposes." Bartholomew, 56 Wn. App. at 622. Nor did RCW 10.93.070(5) apply to the case, as Seattle police were not executing an arrest warrant or a search warrant. Id. at 621.

Brunson asserts that his arrest was unlawful because RCW 10.93.070(5) does not authorize a police officer to participate in the execution of a search warrant anywhere in the state. But here, unlike in Bartholomew, Seattle police arrested the defendant pursuant to a valid warrant for his arrest and without entering a residence. Thus, RCW 10.93.070(5) plainly applies. Brunson also asserts that RCW 10.93.070(3) does not apply because Detective Mellis did not request that Detective Rodgers execute the warrant. But the State does not rely on RCW 10.93.070(3) as legal authority for Brunson's arrest. That subsection has no bearing on the outcome of this case.

II.    Admissibility of Fingerprint Evidence

Brunson argues that the trial court erred in denying his pretrial motion for a Frye hearing regarding the ACE-V fingerprint analysis technique used to link him to a

5

handwritten demand note left behind during one of the robberies. We review a trial court's decision whether to conduct a Frye hearing de novo. State v. Gregory, 158 Wn.2d 759, 830, 147 P.3d 1201 (2006) (overruled by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014)).

Under the Frye standard for admissibility, "evidence deriving from a scientific theory or principle is admissible only if that theory or principle has achieved general acceptance in the relevant scientific community." State v. Baity, 140 Wn.2d 1, 10, 991 P.2d 1151 (2000) (quoting State v. Martin, 101 Wn.2d 713, 719, 684 P.2d 651 (1984)). Where the evidence does not involve new scientific principles or methods of proof, a Frye hearing is unnecessary. State v. Sipin, 130 Wn. App. 403, 415, 123 P.3d 862 (2005). "[A]fter general acceptance of a methodology in the scientific community, application of the methodology to a particular case is a matter of weight and admissibility under ER 702." State v. Lizarraga, 191 Wn. App. 530, 566, 364 P.3d 810 (2015) (citing Baity, 140 Wn.2d at 10).

"Washington has a long history of admitting fingerprint identification evidence." State v. Pigott, 181 Wn. App. 247, 249, 325 P.3d 247 (2014). In Pigott, the defendant argued that new evidence raised questions regarding the general acceptance of the ACE-V fingerprint analysis technique. Id. In support of this argument, the defendant cited Drs. Ralph and Lyn Haber, who assert that "fingerprinting is not an exact science." Id. at 250. The Habers relied on a 2009 report by the National Research Council of the National Academy of Sciences (2009 Report) "which recommended additional testing to determine the reliability of latent fingerprint analysis generally and the ACE-V methodology in particular." Id. at 250-51. Noting that "[t]he reliability of fingerprint identification has been

tested in our adversarial system for over a century and routinely subjected to peer review," we rejected the defendant's arguments and held that the trial court did not err in concluding that a Frye hearing was not needed. Id. See also Lizarraga, 191 Wn. App. at 565-67 (adhering to Pigott).

Here, Brunson requested a pretrial Frye hearing on the ACE-V fingerprint analysis technique. In support of his argument that ACE-V is not generally accepted in the scientific community, Brunson submitted an affidavit from Drs. Ralph and Lyn Haber. In this affidavit, the Habers opined that fingerprint analysis has undergone significant changes in the past 20 years and that several scientific assessments, including the 2009 Report, indicate that scientific consensus regarding reliability and acceptability of such evidence is lacking. The Habers also asserted that the scientific arguments presented in their affidavit rebut and render moot this court's holdings in Pigott and Lizarraga. The trial court rejected these arguments and denied Brunson's motion.

Brunson contends that the trial court's ruling failed to adequately consider the Haber affidavit, including their criticisms of Pigott and Lizarraga. But Brunson has not cited a published opinion of any court holding that ACE-V fingerprint analysis is not generally accepted within the relevant scientific community. Such objections have been uniformly rejected by state and federal courts, both before and after the 2009 Report. See, e.g. U.S. v. Rose, 672 F.Supp.2d 723, 725-26 (2009) (rejecting the Habers' criticism of ACE-V methodology); People v. Luna, 989 N.E.2d 655, 671, 371 Ill.Dec. 65 (2013) (summarizing relevant state and federal cases). We continue to adhere to Pigott and Lizzaraga. The trial court did not abuse its discretion in denying Brunson's motion for a Frye hearing.

III.    Motion to Sever

Brunson asserts that the trial court erred in twice denying his motions to sever counts I and II from counts III-VII. We review a trial court's denial of a motion to sever for manifest abuse of discretion. State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990).

Offenses may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). However, "[t]he law does not favor separate trials." State v. Medina, 112 Wn. App. 40, 52, 48 P.3d 1005 (2002).   Thus, "defendant seeking severance has the burden of demonstrating that a trial involving all counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." State v. Hunyh, 175 Wn. App. 896, 908, 307 P.3d 788 (2013) (citing Bythrow, 114 Wn.2d at 718).

> Joinder may prejudice a defendant in that

> (1) [H]e may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.

Bythrow, 114 Wn.2d at 718 (quoting State v. Smith, 74 Wn.2d 744, 755, 446 P.2d 571 (1968) (overruled by State v. Gosby, 85 Wn.2d 758, 539 P.2d 680 (1975)). Factors that tend to neutralize any prejudice that may result from joinder include:

> (1) [T]he strength of the State's evidence on each count; (2) the clarity of defenses to each count; (3) the court's instruction to the jury as to the limited purpose for which it was to consider the evidence of each crime; and (4) the admissibility of the evidence of the other crimes even if they had been tried separately or never charged or joined.

State v. Eastabrook, 58 Wn. App. 805, 811-12, 795 P.2d 151 (1990) (citing Smith, 74 Wn.2d at 755).

Here, at two separate hearings, Brunson moved to sever counts I and II from counts III through VII. He noted that the first two counts, unlike the remaining five, were supported by evidence of a demand note left behind at the scene of the robbery. These demand notes had remarkably similar handwriting as the note found on Brunson following his arrest, and Brunson's fingerprint was found on one of the notes. He asserted this strong evidence was not cross-admissible as to the remaining counts and that severance was warranted to neutralize the resulting prejudice. Following both hearings, the trial court ruled that the evidence was cross-admissible under ER 404(b) to show identity based on modus operandi, and denied his motion to sever.

ER 404(b) permits admission of evidence of other crimes to demonstrate the perpetrator's identity, but not to prove character in order to show that he acted in conformity therewith. State v. Smith, 106 Wn.2d 772, 775, 725 P.2d 951 (1986).

> When evidence of other bad acts is introduced to show identity by establishing a unique modus operandi, the evidence is relevant to the current charge 'only if the method employed in the commission of both crimes is "so unique" that proof that an accused committed one of the crimes creates a high probability that he also committed the other crimes with which he is charged.

State v. Thang, 145 Wn.2d 630, 643, 41 P.3d 1159 (2002) (quoting State v. Russell, 125 Wn.2d 24, 66–67, 882 P.2d 747 (1994)). The method of committing the crimes "must be so unusual and distinctive as to be like a signature." State v. Coe, 101 Wn.2d 772, 777, 684 P.2d 668 (1984) (quoting Edward W. Cleary, McCormick's Handbook of the Law of Evidence § 190, at 449 (2d ed.1972)). "The greater the distinctiveness, the higher the probability that the defendant committed the crime, and thus the greater the relevance."

9

Thang, 145 Wn.2d at 643 (citing Coe, 101 Wn.2d at 777–78). Factors relevant to similarity include geographic proximity, commission of the crimes within a similar time frame, and wearing similar clothing. Thang, 145 Wn.2d at 643.

We conclude that there was a tenable basis for the trial court to find that the criminal method employed in each count was sufficiently unique and distinctive to constitute a "signature." All seven counts involved robberies of commercial establishments in Seattle and South King County, including Starbucks, Subway, and Rite Aid. All took place during a six-week period in January and February 2017. In all seven robberies, the suspect wore similar clothing, including a hooded black zip-up jacket, a black knit cap, and black sunglasses; used a robbery demand note; and placed the cash in a black drawstring bag. In all but count V, the suspect showed or threatened that he had a gun. Also, in all but counts II and IV, the suspect ordered food immediately prior to commencing the robbery. In light of these similarities, the trial court did not abuse its discretion in concluding that the need for judicial economy outweighed the potential for prejudice.

Brunson likens his case to State v. Bluford, but that case is distinguishable. 188 Wn.2d 298, 393 P.3d 1219 (2017). In Bluford, the defendant was charged with seven counts of first degree robbery, one count of first degree rape, and one count of indecent liberties. Id. at 303. The trial court granted the State's motion to join all nine counts and denied the defendant's motion to sever the two robberies accompanied by sexual offenses from the five remaining robberies. Id. at 303-304. The Washington Supreme Court held that the trial court abused its discretion by finding that the evidence on all charges was cross-admissible to prove identity based on modus operandi. Id. at 315. The

court reasoned that "the differences between the charges were notable, particularly as to the two robberies accompanied by sexual offenses." Id. at 314. Moreover, the similarities between the charges were more general than distinctive. Id. Here, in contrast, the differences among the charges against Brunson were far less significant than in Bluford. Moreover, the prejudice inherent in sexual offenses is absent in this case.

We also agree with the State that Brunson has not demonstrated prejudice. In the absence of evidence to the contrary, we presume that the judge in a bench trial does not consider inadmissible evidence in rendering a verdict. State v. Gower, 179 Wn.2d 851, 855, 321 P.3d 1178 (2014). "Moreover, in a bench trial, the danger of prejudice is reduced because a trial judge, due to his or her experience and training, is in a better position than jurors to identify and focus on the probative quality of evidence" and to disregard prejudice. State v. Jenkins, 53 Wn. App. 228, 236-37, 766 P.2d 499 (1989). In this stipulated facts bench trial, Brunson has not shown that the trial court prejudicially used the evidence on counts I and II to find guilt on the remaining counts based on criminal disposition, or that the court prejudicially cumulated the evidence of the various crimes charged to find guilt.

IV.    Restitution

Brunson argues that the trial court erred by requiring him to pay $140 in restitution to Rite Aid. We review the trial court's restitution award for an abuse of discretion. State v. Velezmoro, 196 Wn. App. 552, 557, 384 P.3d 613 (2016). We will find an abuse of discretion only if the decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. State v. Tobin, 132 Wn. App. 161, 173, 130 P.3d 426 (2006) (citing State v. Polland, 66 Wn. App. 779, 785, 834 P.2d 51 (1992)).

11

The court's authority to award restitution is based solely on statute. State v. Christensen, 100 Wn. App. 534, 536, 997 P.2d 1010 (2000). Restitution "shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." RCW 9.94A.753(5). The State bears the burden of establishing the amount of restitution by a preponderance of the evidence. State v. Cosgaya-Alvarez, 172 Wn. App. 785, 795, 291 P.3d 939 (2013).

The amount of restitution must be based on "easily ascertainable damages." RCW 9.94A.753(3). "While the claimed loss 'need not be established with specific accuracy,' it must be supported by 'substantial credible evidence.'" State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008) (quoting State v. Fleming, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994). "'Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" State v. Deskins, 180 Wn.2d 68, 82-83, 322 P.3d 780 (2014) (quoting State v. Hughes, 154 Wn.2d 118, 154, 110 P.3d 192 (2005)) (internal quotation marks omitted) (overruled on other grounds by Wash. v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Although the rules of evidence do not apply to restitution hearings, the evidence must meet minimum due process requirements, such as being reasonably reliable. State v. Kisor, 68 Wn. App. 610, 620, 844 P.2d 1038 (1993).

Here, the State provided a restitution packet to the trial court, including a victim loss statement completed under penalty of perjury by Rite Aid Corporation employee Aeden Kelley in Camp Hill, Pennsylvania. The form indicated that $140 was taken from the cash register. The victim loss statement was accompanied by a critical incident report

describing details of the robbery, including photographs of Brunson and of the Rite Aid store he robbed in Seattle.

Brunson argues that this evidence falls short of the minimum standards required to support a restitution award. He contends that the victim loss statement was provided by an unknown individual and that the State failed to provide documentation supporting the amount of the award. However, Brunson expressly agreed that material submitted for purposes of his stipulated trial could be used for sentencing purposes. This includes a SPD incident report in which Rite Aid cashier Anthony Widick states that during the robbery, "[he] pulled the top drawer of the register out and gave it to the suspect. He said it was approximately $140." Sufficient evidence supports the restitution award.

Affirmed.

WE CONCUR:

Andrus, J.

Smith, J.